The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NARINDER SOHAL,

Plaintiff,

v.

PROGRESSIVE DIRECT INSURANCE COMPANY, a foreign corporation

Defendant.

NO. 25-cv-1920-RSL

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

This matter is before the Court on "Plaintiff's Motion for Leave to Amend Complaint." Dkt. 16. Defendant Progressive Direct Insurance Company ("Progressive") opposes the motion. Dkt. 17. Having reviewed the parties' submissions, the record of the

case, and the relevant legal authority, the Court grants in part and denies in part the motion for the reasons set forth below.[1]

**BACKGROUND**

This is an insurance coverage dispute arising out of plaintiff's claim for underinsured motorist ("UIM") benefits for injuries sustained in a motor vehicle accident on April 25, 2025. At the time, plaintiff was operating his vehicle in the course of his contract with Uber, a rideshare company. Progressive denied UIM coverage based on a rideshare exclusion in the policy, which it contends applies because plaintiff had accepted a ride request and was traveling to pick up the passenger when the accident occurred. Plaintiff filed this lawsuit on September 5, 2025, alleging causes of action for breach of contract, violation of the Insurance Fair Conduct Act, bad faith, and violation of the Consumer Protection Act.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712

---

[1] Defendant requests oral argument, but the Court finds that oral argument is unnecessary to resolve the motion.

(9th Cir. 2001). "In determining whether leave to amend is appropriate, the district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Id.* (*quoting Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). Of these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**DISCUSSION**

Plaintiff's proposed amended complaint expands the factual allegations concerning Progressive's handling of the UIM claim and adds a Fifth Cause of Action entitled "Equitable Estoppel." Dkt. 16-1 ¶¶ 4.7–4.14, 10.1–10.10. Plaintiff alleges that, after the accident and while Progressive was adjusting his claim, a Progressive adjuster represented that plaintiff had $50,000/$100,000 in UIM coverage. The following day, Progressive provided a declarations page listing those UIM limits and identifying plaintiff's vehicle as subject to a "Rideshare Use" endorsement. Plaintiff claims that he relied on those communications in making treatment decisions and incurred additional medical debt and other harm. Despite those earlier communications, Progressive ultimately denied UIM

coverage for the accident based on the terms of the Rideshare Use endorsement.[2] *Id.* ¶¶ 4.9–4.14, 10.2–10.9. The proposed Fifth Cause of Action alleges that Progressive's representations "were made in bad faith" and, "[c]onsequently," Progressive is equitably estopped from denying the $50,000 UIM limit and plaintiff is entitled to "coverage by estoppel and the full policy benefits as if the denial had never occurred." *Id.* ¶ 10.10.

### A. Whether the Proposed Amendment is Futile

Progressive principally argues that plaintiff's proposed estoppel claim is futile because estoppel cannot be used to create coverage contrary to the policy's express terms. According to Progressive, the policy terms governing Rideshare Use do not provide UIM coverage for this accident, and traditional equitable estoppel cannot be used to obtain coverage that is otherwise unavailable under the policy. Progressive further argues that

---

[2] The policy's UIM provisions contain an exclusion for bodily injury sustained during "ride-sharing activity" and an exception to that exclusion for the driver of a vehicle identified on the declarations page as having "Rideshare Use" coverage while the driver is logged into a rideshare application but has not yet engaged in a "prearranged service." Dkt. 14-2 at 3. The policy defines "prearranged service" to include traveling to an accepted pickup location. *Id.* at 2. Plaintiff reported that he had accepted a ride and was traveling to the pickup location when the accident occurred. Dkt. 14-1 at 2–3. Progressive contends that plaintiff was therefore engaged in a prearranged service and that UIM coverage is unavailable; plaintiff disputes Progressive's interpretation and application of these provisions.

coverage by estoppel, a distinct remedy for certain forms of insurer bad faith, is unavailable because plaintiff's UIM claim is a first-party claim.

Plaintiff responds that the allegations summarized above satisfy the requirements for traditional equitable estoppel and argues that Progressive therefore may be precluded from denying the UIM coverage it allegedly represented was available. He further contends that he is entitled to the full $50,000 UIM benefit, rather than merely the additional medical expenses allegedly incurred because of the delayed denial.

The parties' arguments are complicated by the fact that plaintiff's proposed Fifth Cause of Action intertwines two distinct concepts under Washington insurance law: traditional equitable estoppel and coverage by estoppel. The former is an equitable doctrine based on inconsistent conduct, reliance, and resulting prejudice; the latter is a distinct remedy Washington recognizes for certain forms of insurer bad faith in connection with third-party liability claims. The distinction is important because the doctrines arise under different circumstances and are subject to different limitations. The Court therefore begins by addressing them separately before determining whether plaintiff's proposed amendment is futile.

Traditional equitable estoppel is not itself an affirmative cause of action. Rather, it may be asserted defensively to prevent a party from taking a position inconsistent with one on which another party justifiably relied. *Byrd v. Pierce County*, 5 Wn. App. 2d 249,

258 (2018). The doctrine generally requires: "(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate" the earlier position. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 340 (1989) (*quoting McDaniels v. Carlson*, 108 Wn.2d 299, 308 (1987)). The reliance must be reasonable or justifiable. *Id*.

Traditional equitable estoppel may arise in insurance disputes. In *Saunders*, the Washington Supreme Court recognized that an insurer's conduct subsequent to issuance of the policy may estop it from asserting rights it otherwise would possess under the policy where the insured reasonably relied on that conduct. *Id*. at 342–43. But the court also recognized an important limitation. As a general rule, estoppel cannot "bring into existence a contract not made by the parties" or extend coverage to risks not included in, or expressly disclaimed by, the policy. *Id*. at 335–36. The rationale is that an insurer generally should not be required through estoppel to pay for a loss arising from a risk it did not contract to insure and for which it received no premium. *Id*. Thus, the *Saunders* court permitted an estoppel theory to proceed in the case before it because the alleged conduct concerned the insurer's prior practice of accepting late renewal premiums and backdating the policy, rather than an effort to enlarge the substantive risks insured by the policy. *Id*. at 342–43.

Coverage by estoppel is different. In *Safeco Insurance Co. of America v. Butler*, 118 Wn.2d 383 (1992), the Washington Supreme Court considered an insurer's bad-faith handling of a third-party claim while defending its insured under a reservation of rights. The court determined that the policy itself did not cover the underlying injury because it was not caused by an "accident." *Id*. at 401–02. Safeco therefore argued, relying principally on *Saunders*, that its conduct could not create coverage where the policy provided none. *Id*. at 392–93. The court rejected that argument, holding that where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from asserting an otherwise valid coverage defense. *Id*. at 392–94. Thus, unlike traditional equitable estoppel, coverage by estoppel is not premised simply on an inconsistent position, reliance, and resulting prejudice. It is a remedy Washington recognizes for certain bad-faith breaches of an insurer's obligations in connection with third-party liability claims, and it may result in coverage even though the policy itself does not provide it.

The Washington Supreme Court subsequently declined to extend that remedy to first-party insurance claims. *Coventry Assocs. v. Am. States Ins. Co*., 136 Wn.2d 269, 283–85 (1998). *Coventry* held that a first-party insured may maintain a bad-faith claim even when the insurer ultimately was correct that the policy did not cover the loss because the insurer's duty of good faith is independent of its duty to indemnify. *Id*. at 279. But the

court rejected coverage by estoppel as the remedy for such first-party bad faith. It distinguished *Butler* on the ground that, in the third-party setting, the insurer's handling of the defense may itself contribute to the loss ultimately sustained by the insured, whereas in the first-party setting the underlying loss ordinarily "has been incurred before the insurance company is aware a claim exists." *Id*. at 284. Accordingly, although a first-party insured may recover consequential damages caused by the insurer's bad faith and general tort damages, coverage by estoppel is not available to provide policy benefits for a loss the policy otherwise does not cover. *Id*. at 284–85.

With these principles in mind, the Court concludes that traditional equitable estoppel does not provide plaintiff an independent basis for obtaining the UIM benefits sought in his proposed Fifth Cause of Action. If the rideshare exclusion does not bar UIM coverage for this accident, plaintiff's entitlement to benefits arises under the policy itself and may be pursued through his breach-of-contract claim. Traditional equitable estoppel provides no additional entitlement to those benefits. If, on the other hand, the rideshare exclusion bars coverage, plaintiff may not use traditional equitable estoppel to eliminate that substantive restriction and obtain benefits for a risk the policy excludes. *See Saunders*, 113 Wn.2d at 335–36. Thus, under either resolution of the parties' coverage dispute, traditional equitable estoppel does not provide an alternative route to the UIM benefits plaintiff seeks. Moreover, because traditional equitable estoppel is a defensive

doctrine rather than an affirmative cause of action, it may not be pleaded as a separate Fifth Cause of Action. *See Byrd*, 5 Wn. App. 2d at 258–61.

Plaintiff's proposed amendment goes further, however, by seeking coverage by estoppel as a remedy for Progressive's alleged bad faith. Paragraph 10.10 alleges that Progressive's representations were made "in bad faith" and that, "[c]onsequently," Progressive is estopped from denying the $50,000 UIM limit and plaintiff is entitled to "coverage by estoppel and the full policy benefits as if the denial had never occurred." Dkt. 16-1 ¶ 10.10. That is the coverage-by-estoppel remedy discussed in *Butler*. Coverage by estoppel is unavailable here. Plaintiff's UIM claim is a first-party claim, and *Coventry* expressly declined to extend coverage by estoppel to first-party insurance disputes. 136 Wn.2d at 283–85. Plaintiff's proposed coverage-by-estoppel theory is therefore futile as a matter of law.

The futility of plaintiff's proposed estoppel claim does not, however, render the factual allegations underlying that claim futile. *Coventry* makes clear that a first-party insured may maintain a bad-faith claim even when the insurer ultimately establishes that the policy did not cover the loss and may recover consequential damages caused by the insurer's bad faith, as well as general tort damages. *Id*. at 279, 284. Plaintiff alleges that Progressive's representations concerning UIM coverage affected his treatment decisions and caused him to incur additional medical debt before he learned that Progressive had

denied coverage. Those allegations may therefore bear on plaintiff's existing bad-faith and Consumer Protection Act claims and on any damages he can establish were caused by Progressive's claim handling, regardless of whether the policy ultimately provides UIM coverage.

### B. Whether the Proposed Amendment Would Cause Progressive Undue Prejudice

Progressive also argues that amendment would cause undue prejudice because the parties have already exchanged discovery and Progressive has filed a motion for summary judgment. The Court is not persuaded. The amendment permitted by this Order does not add a new cause of action, transaction, or occurrence but instead adds factual allegations concerning Progressive's representations and handling of the same UIM claim already at issue in this action. Indeed, Progressive itself contends that the facts underlying the proposed amendment were already alleged in the original complaint and addressed in its summary-judgment motion. Although the amended allegations may warrant some additional discovery concerning Progressive's representations, plaintiff's reliance, and resulting prejudice, Progressive has not shown that such discovery would require the parties to "re-start" the discovery process or otherwise materially alter the nature of the litigation. Indeed, neither the discovery nor dispositive motions deadline has passed in this case. Nor does the fact that Progressive has already filed a summary-judgment motion

establish undue prejudice. Plaintiff sought Progressive's agreement to amend before learning that Progressive intended to move for summary judgment and formally sought leave to amend five days after Progressive filed its motion. Dkt. 19-1 ¶ 3 & Ex. 2. Under these circumstances, the prospect of limited additional discovery and renewed dispositive-motion practice does not constitute undue prejudice sufficient to deny leave to amend.[3]

Accordingly, plaintiff may amend his complaint to add the factual allegations concerning Progressive's alleged coverage representations, his reliance on those representations, and the resulting harm, insofar as those allegations bear on his existing bad-faith and Consumer Protection Act claims. Plaintiff may not, however, add the proposed Fifth Cause of Action for Equitable Estoppel. Traditional equitable estoppel is not an affirmative cause of action and, in the circumstances alleged here, does not provide an alternative basis for obtaining UIM benefits. Nor may plaintiff allege that Progressive's purported bad faith gives rise to coverage by estoppel or, on that basis, entitles him to policy benefits otherwise unavailable under the policy.

---

[3] Progressive separately argues that the proposed amendment is futile because it relies on facts already alleged in the original complaint and addressed in Progressive's summary-judgment motion. That does not establish futility. Futility concerns the legal sufficiency of the proposed amendment, not whether it relies on previously alleged facts. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117–18 (9th Cir. 2013).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part plaintiff's Motion for Leave to Amend Complaint. Dkt. 16. Plaintiff shall file a revised amended complaint consistent with this Order within 21 days of the date of this Order.

Dated this 18th day of August 2026.

Robert S. Lasnik
United States District Judge